**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| FREDERICK P. DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 4:16-CV-229 CAS |
| v. | ) |
| | ) |
| JOHN JOMP, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This prisoner civil rights matter is before the Court on a motion for summary judgment filed

by remaining defendants John Jomp, Gayle Ellerbeck, Melanie Hinkle, Stanley G. Lucas, Clair Stadt,

and Troy Steele directed to plaintiff's Second Amended Complaint ("Complaint").[1]  Plaintiff

Frederick P. Davis opposes the motion and it is fully briefed. The defendants move for summary

judgment on plaintiff's claims pursuant to 42 U.S.C. § 1983 on the merits and on the basis of

qualified immunity. Defendant Jomp also moves for summary judgment on plaintiff's supplemental

state law claim of defamation on the basis of official immunity under Missouri law.  For the

following reasons, the defendants' motion for summary judgment will be granted on plaintiff's

§ 1983 claims.  The Court declines to exercise supplemental jurisdiction over plaintiff's state law

claim and will dismiss it without prejudice.

---

[1]On review pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court dismissed plaintiff's claims in the Complaint against defendants Doris Brooks, Aaron G. Evans, Sandra Boylan, Teri Lawson, Kerry Klein, Lori Langley, Shannon McCarty, Melba Miller, and Dale Phillips. This aspect of the Court's dismissal was affirmed by the Eighth Circuit Court of Appeals on November 8, 2016. See Davis v. Boylan, 670 F. App'x 435 (8th Cir. 2016).

## I. Background

Plaintiff, a prisoner at Eastern Reception, Diagnostic and Correctional Center ("ERDCC") in Bonne Terre, Missouri, filed this suit under 42 U.S.C. § 1983 alleging that in retaliation for various institutional complaints and grievances he filed, defendant Jomp issued him a false conduct violation report; defendants Ellerbeck, Hinkle, Lucas, and Stadt transferred him to a cell in a different housing unit with conditions that threatened his health; and defendant Steele threatened to limit his access to the grievance process.

## II. Legal Standard

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in his pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of

2

material fact exists. Fed. R. Civ. P. 56(c); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact, see Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004), and "must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." Davidson & Assocs. v. Jung, 422 F.3d 630, 638 (8th Cir. 2005). "[M]ere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Williams v. Wells Fargo Bank, N.A., No. 16-4372, slip op. at 5, __ F.3d __ (8th Cir. Aug. 29, 2018) (quoted case omitted).

### III. Facts[2]

As a threshold matter, the Court conducted an *in camera* review of the documents listed on defendants' privilege log pursuant to the Memorandum and Order of August 14, 2018 (Doc. 180).

---

[2]Plaintiff sought to controvert most of defendants' Statement of Uncontroverted Material Facts, frequently offering lengthy explanations and arguments that do not actually demonstrate any genuine dispute as to the defendants' factual statements. Plaintiff often refers to his verified Complaint for factual support, but many of the cited paragraphs consist of speculation, conjecture, or legal conclusions. Where plaintiff establishes a genuine dispute as to a material issue of fact, the Court accepts plaintiff's version of events as true. Plaintiff's response to defendants' Statement of Uncontroverted Material Facts also objects to defendants' summary judgment Exhibits A, C, and G. Plaintiff's separate motions to strike Exhibits A, C, and G were denied as without merit by Memorandum and Order of August 14, 2018 (Doc. 181).

Some, but not all, of the documents listed on the privilege log are relevant to plaintiff's claims in this case, in that they offer a more complete picture of the facts, but none of the documents offer any support for plaintiff's retaliation claims. Plaintiff's repeated contentions in his opposition memorandum, that he was unable to fully respond to defendants' summary judgment motion because he did not have access to privilege log documents that would prove his retaliation claims, are therefore meritless. The defendants do not rely on any of the documents listed on the privilege log in support of their summary judgment motion. For these reasons, the Court does not believe there is any cause to delay a ruling on defendants' summary judgment motion to allow plaintiff to view the documents, and finds that plaintiff does not have a right to obtain copies of the privilege log documents.[3] See Mem. and Order of Aug. 14, 2018 at 4-5 (Doc. 180) (stating the Court would determine after *in camera* review whether plaintiff would need an opportunity to view any of the privilege log documents).

The Court finds the following facts for purposes of summary judgment:

Plaintiff is an inmate incarcerated at ERDCC. Defendants Jomp, Ellerbeck, Hinkle, Lucas, Stadt, and Steele are current or former ERDCC employees. At all relevant times, defendants Jomp and Ellerbeck were correctional officers, defendants Hinkle, Lucas, and Stadt were caseworkers, and defendant Steele was the warden. While incarcerated at ERDCC, plaintiff has filed numerous Informal Resolution Request ("IRR") complaints, Offender Grievances, and Offender Grievance Appeals against prison staff, both before and after the events this suit concerns.

---

[3]Further, the Court finds that to permit plaintiff to have copies of the documents listed on defendants' privilege log would raise institutional security concerns.

A. False Conduct Violation - Defendant Jomp

Between February 2015 and April 2015, plaintiff made numerous verbal complaints to ERDCC housing unit staff officers about defendant Jomp's distribution of mail to the wrong inmates. Plaintiff also complained to the housing unit functional unit manager about Jomp's distribution of the mail, and had the issue raised as a concern in the housing unit inmate counsel meeting. Plaintiff testified that he knew Jomp was aware of his complaints about mail delivery because one day Jomp brought some mail to plaintiff's cell and showed plaintiff the envelope and asked if that was his name on it. When plaintiff said yes, Jomp responded, "Maybe now you'll stop your damn complaining about the mail," and then left the cell.

After plaintiff made the complaints about mail delivery, Jomp demanded that plaintiff look him in the eyes when Jomp conducted daily count periods, although this was not an institutional requirement. Jomp stopped by plaintiff's cell one day when plaintiff was not there and told plaintiff's cellmate, Paul Cote, that inmates having cloths on top of their cell doors was his pet peeve. There was a cloth on the top of plaintiff and Cote's cell door at the time. Jomp did not tell Cote to remove the cloth or that it was against the rules to have the cloth in the door. Cote testified that he told Jomp the cloth was his face towel that he placed on the cell door to keep it from swinging open, because prison rules required that the doors either be completely open or closed and the cell door "would swing open of its free will if you didn't put [the cloth] there. It would swing open half to three-quarters of the way." Cote testified that he told Jomp to put in a work order to fix the door. Cote also testified that the face towel had his name written on it with permanent marker, he was the person who placed it on the door, and it was present in the door "24/7" for approximately six months from the time he moved into cell A217 until after the conduct violation was written.

5

On April 23, 2015, plaintiff filed an IRR on Jomp (ERDCC 15-624), complaining of harassment, retaliation, and threats based on (1) Jomp demanding that plaintiff look him in the eyes during count periods, and (2) Jomp demanding that inmates who had complained about his mail distribution take cloths off the top of their cell doors or he would write a conduct violation on them, even though the cloths were there to prevent injury and did not interfere with the cell door's operation or with the locking mechanism.

On April 29, 2015, plaintiff was called to the back office and given a computer printout of a conduct violation issued to him by Jomp (ERDCC 15-2374), that was not signed by Jomp as the reporting employee. The conduct violation stated:

> On the above date and approximate time [4/29/2015, 4:30 p.m.], I, CO1 John W. Jomp was doing the 4:30 PM count w CO1 Sandra Boylan and notice[d] a cloth wedged between the door and the door frame of cell A217. Offender [Frederick] Davis #500842 had been previously given 2 directives to take the cloth down during lockdowns. By his own action, offender Frederick Davis placed himself in violation of rule 26.1 Tampering with Locking or Safety Devices.

The next day, April 30, 2015, plaintiff filed an IRR on Jomp asserting due process and retaliation violations (ERDCC 15-654). Plaintiff asserted that Jomp wrote ERDCC 15-2374 on him in retaliation for the IRR ERDCC 15-624 that plaintiff filed about Jomp on April 23, 2015

It is undisputed there was a face towel on plaintiff's cell door on April 29, 2015. Jomp admits that he never saw plaintiff place the towel on the cell door. Paul Cote submitted a written witness statement for the hearing on plaintiff's conduct violation ERDCC 15-2374, which stated in part that Jomp spoke to Cote once about the cloth on the cell door, and that Cote told Jomp at the time that the cloth belonged to him.

6

Plaintiff was found guilty of the conduct violation by the grievance hearing officer, caseworker Stanley Lucas, who considered Jomp's statements in the conduct violation, Cote's witness statement, and plaintiff's written statement. Lucas told plaintiff that he would not go against the officer but would not put him in administrative segregation on the violation. Lucas recommended that plaintiff receive 20 days in administrative segregation, to be suspended for 30 days. The finding of guilt was approved and upheld by Functional Unit Manager Kerry Klein and Deputy Warden Teri Lawson. Plaintiff did not go to segregation as a result of the finding but lost the privilege of some food visits with his family, and was concerned about having to avoid another violation for a year in order to remain in the incentive wing.

Plaintiff learned in 2017 that it had been recommended the conduct violation be dismissed or expunged, but the deputy director for the zone denied the recommendation and the conduct violation was not dismissed. Pl.'s Dep. 42:23-44:20.

Plaintiff and Paul Cote both testified that numerous inmates complained about Jomp misdelivering the mail, but they did not know if Jomp retaliated against any other inmate. Plaintiff was the only inmate who received a conduct violation for having a cloth on his cell door. Plaintiff declined to provide the names of any other inmates who he said wanted to file grievances against Jomp but did not, because of the conduct violation plaintiff received.

Plaintiff testified, "Inmates [are] always intimidated by staff or officers giving another inmate a conduct violation, especially when they know it's linked to something they filed on the staff member, because nobody wants to get kicked out of the incentive wing." Pl.'s Dep. 34:19-35:1. Plaintiff testified, however, "I care more about principle than I do the incentive wing," id. 35:1-2, and, "If it wasn't for me just being an obstinate individual when it comes to my principles being

7

violated, when it comes to people lying about me – so as I said before, a general inmate will shy away from filing IRRs and complaining any further about staff members that they know are rogue and reckless." Pl.'s Dep. 37:6-14.

Since the time plaintiff received the conduct violation from Jomp on April 29, 2015, he has filed over seventy IRR complaints, over sixty Offender Grievances, and over fifty Offender Grievance Appeals.

### B. Retaliatory Transfer - Defendants Ellerbeck, Hinkle, Lucas, and Stadt

Plaintiff filed grievances against a number of Housing Unit 3 staff, including Lucas, Stadt, Ellerbeck, Jomp, and Hinkle. In some of these IRRs, plaintiff asked that Lucas, Stadt, and Ellerbeck be removed from Housing Unit 3. On July 21, 2015, Ellerbeck called plaintiff to the housing unit control center and told him he was being transferred to Housing Unit 1. On July 21, 2015, defendant Hinkle was the acting Functional Unit Manager of Housing Unit 3, as Functional Unit Manager Kerry Klein was on vacation. It is undisputed that Hinkle was the caseworker who transferred plaintiff to Housing Unit 1.

Both Housing Unit 3 and Housing Unit 1 at ERDCC are "incentive" housing units. Plaintiff testified that "nobody gets to the incentive wing on accident. It's because you've kept yourself away from harm, you've kept yourself out of trouble, you've kept yourself in a model inmate sort of stance or position." Pl.'s Dep. 32:2-7. Plaintiff testified that Housing Units 3 and 1 are the same in all essential respects except the doors are different and are noisier when they close.

Plaintiff had been assigned to Housing Unit 3, cell A217, from May 28, 2014 until July 21, 2015, when he was transferred to Housing Unit 1, cell B110. Plaintiff had a bottom bunk in cell A217 from August 12, 2014 until July 21, 2015. Plaintiff had requested a bottom bunk because of

8

various physical conditions including arthritis in his knees and tendinitis in his elbows, but plaintiff did not have a medical lay-in restriction that required him to have a bottom bunk. Plaintiff's cellmate in Housing Unit 3 was Paul Cote.

Plaintiff was assigned a top bunk in cell B110. Plaintiff's cellmate in Housing Unit 1 was Terry Herrington, who was a smoker and "a young guy who was a gang member." Plaintiff is a non-smoker and had nothing in common with Herrington. Plaintiff did not have any medical lay-in restrictions that would have prevented him from being able to share a cell with Herrington or any other smoker, that would have required him to be assigned a bottom bunk, or that would have prevented him from being around loud noises. Herrington never threatened plaintiff. Plaintiff developed phlegm while sharing a cell with Herrington but does not remember seeking any medical attention for it. Plaintiff remained in Housing Unit 1, cell B110, for seventy-three days, until October 2, 2015, when he was transferred back to Housing Unit 3, cell A217, and assigned a bottom bunk.

Plaintiff submitted an IRR complaint (ERDCC 15-1244) regarding his July 21, 2015 transfer, to which he received the following response:

> NATURE OF COMPLAINT:
> You state that you were subjected to a retaliatory transfer from housing unit three to housing unit one. You are requesting that you be returned to the same cell (3-A-217) and that caseworkers Stadt and Lucas as well as CO1 Ellerbeck be removed from housing unit three.
>
> FINDINGS:
> Your IRR and all pertinent information/documentation have been received and reviewed. Upon review it was found that you were moved on July 21, 2015 per directive of Functional Unit Manager Kerry Klein; however, it was not due to any form of retaliation as you have indicated. You filed numerous IRR's alleging the Case Managers in Housing Unit 3 were interfering with your "access to the courts" and had been retaliat[ing] against you for filing these IRR's. Therefore, the

Functional Unit Manager believed it would be in the best interest for you to be moved from Housing Unit 3, as the majority of the complaints were against staff in the unit. This is to provide you easier access to the Functional Unit Manager, where FUM Klein['s] primary office is. You were moved to another incentive wing housing unit with the same exact privileges and properly assigned to a cell based on your PREA assessment score.[4]

Defs.' Ex. J (Response to IRR complaint #ERDCC 15-1244).[5]

Plaintiff was dissatisfied with the response and filed an Offender Grievance (ERDCC

15-1244) on August 20, 2015. The Superintendent's Response to the Offender Grievance stated:

Mr. Davis, I am in receipt of your grievance dated August 28, 2015 alleging you are being subjected to retaliation when you were reassigned from Housing Unit #3 to Housing Unit #1. You are requesting to be returned to your original cell assignment.

Your complaint and pertinent information have been reviewed. Be advised, the response you received at the IRR level has adequately addressed your complaint. I could find no evidence, nor have you provided any, to substantiate your allegations of being subjected to retaliation by staff. Furthermore, you are appropriately assigned as outlined by [policy] SOP5-3.1 Offender Housing Assignment. Therefore, with this information, I find your complaint resolved.

Defs.' Ex. K (Response to Offender Grievance #ERDCC 15-1244).

Plaintiff appealed the decision on his Offender Grievance. The response Plaintiff received

to his Offender Grievance Appeal (ERDCC 15-1244) from Dwayne Kempker, Deputy Division

Director of the Division of Adult Institutions stated:

I have reviewed your appeal dated October 16, 2015. The grievance response adequately addressed your complaint. Functional Unit Manager Kerry Klein stated you were moved to Housing Unit #1 after you filed several complaints against staff in Housing Unit #3. He felt it was in your best interests to move you to the housing

[4]PREA refers to the Prison Rape Elimination Act of 2003, 34 U.S.C. §§ 30301-30309.

[5]The parties do not address the fact that although the decision to transfer plaintiff was made by defendant Hinkle while she was acting Functional Unit Manager of Housing Unit 3, the IRR response and Offender Grievance Appeal response state that the decision was made by Kerry Klein, who was on vacation at the time. As a result, the Court does not address the issue further.

unit where his main office was, so you would be able to speak to him more easily. Furthermore, you were moved to another incentive wing where you had the same privileges you had in Housing Unit #3. You have not provided any additional evidence to support your claim you were transferred to Housing Unit #3 in retaliation for filing complaints. Your appeal is denied.

Defs.' Ex. L (Response to Offender Grievance Appeal #ERDCC 15-1244).

The Citizens Advisory Committee on Corrections reviewed Plaintiff's grievance (ERDCC 15-1244), agreed with the response Plaintiff received to his Offender Grievance Appeal, and stated, "The offender appears to have gotten what he wanted – to be away from certain COs." Defs.' Ex. M (Citizens Advisory Committee Recommendation).[6]

Plaintiff testified that Ellerbeck told him on July 21, 2015, "[T]his is what happens to inmates when they file grievance complaints on staff in this housing unit." Plaintiff testified that on July 24, 2015, Hinkle told plaintiff she moved him from Housing Unit 3 to Housing Unit 1 because he filed IRR complaints on Lucas, Stadt, Ellerbeck, Evans, and Jomp, and also on Functional Unit Manager Kerry Klein, Assistant Warden Teri Lawson, and Hinkle herself. Plaintiff testified that Hinkle told plaintiff he was moved because in his IRR complaint he requested that Lucas and other staff be removed from Housing Unit 3, and Hinkle was not going to move staff because plaintiff requested it, but would move plaintiff at staff's request.

---

[6]The Citizens Advisory Committee on Corrections "considers offender grievances referred to the Director of the Department of Corrections and makes recommendations to the Director for resolution of these grievances as specified in the Department's Offender Grievance Procedure." Its mission is "to enable the Department of Corrections to operate at the highest professional level and to provide inmates of correctional institutions with an objective and impartial source for the resolution of grievances and concerns." Missouri Boards and Commissions, https://boards.mo.gov/userpages/Board.aspx?38 (last accessed August 30, 2018).

Plaintiff's niece called Assistant Warden Teri Lawson on July 22, 2015 concerning plaintiff's transfer, and Lawson told her that "offender Davis was moved because of IRR complaints he filed on some of the staff in housing unit three."

Defendant Lucas averred that he "was not aware of the plaintiff's move until the morning it happened." Pl.'s Ex. 2 at 15 (Doc. 117-2). Defendant Stadt averred that she knew plaintiff was moved "after that information was put into the system." Pl.'s Ex. 6 at 4 (Doc. 117-6).

When plaintiff was asked during discovery what evidence he had to demonstrate each of the Defendants' personal involvement in his transfer, plaintiff referred to the allegations of his Complaint. Defs.' Ex. P. In the Complaint, plaintiff alleged that "[Defendants Hinkle], Lucas, Stadt and Ellerbeck moved the plaintiff because they were angry about the grievances plaintiff filed on them." (Doc. 14, at 14, ¶ 55); "defendants Lucas, Stadt, and Ellerbeck conspired with defendant Hinkle . . . [a]nd she arbitrarily moved the Plaintiff form [sic] [Housing Unit 3] to [Housing Unit 1] in retaliation and in response to the IRR complaint . . . ." (Doc. 14, p. 16, ¶ 61); and "defendants Lucas, Hinkle, Stadt, and Ellerbeck . . . transferred the Plaintiff from housing unit three [ ] to housing unit one [ ] in retaliation for and in response to IRR grievance complaints the Plaintiff filed . . . ." (Doc. 14 at 27, ¶ 102).

### C. Threat to Limit Grievance Access - Defendant Steele

Missouri Department of Corrections policy #D5-3.2 establishes procedures for Offender Grievances and provides in pertinent part as follows:

III. PROCEDURES:
. . . .
E. Abuse/Misuse of the Offender Grievance Procedure:

1. All offenders are encouraged to utilize this procedure for the redress of grievances; however, offenders must refrain from knowingly and deliberately filing improper informal resolution requests/offender grievances, as well as duplicating informal resolution requests/offenders grievances.

. . . .

3. Misuse of the Offender Grievance Procedure:

> a. Duplicate Complaints: Specific issues or incidents will be addressed only once by informal resolution request or offender grievance.

> b. Expanded Complaints: Each informal resolution request and offender grievance is limited to one grievable issue and should not be expanded to include other issues at any stage of the review process.

> c. Continued filing of duplicate or expanded informal resolution requests/offender grievances will be considered misuse of the procedure and will be dealt with as stated in III. E. 4.

4. Restrictions for Abuse/Misuse of the Procedure: Offenders who misuse or abuse the process should be brought to the attention of the superintendent within 5 working days.

> a. The superintendent will review documentation substantiating the misuse/abuse.

>> (1) The superintendent may issue a Letter of Caution (Attachment E) or may limit the offender to two new complaints per week for a maximum duration of 90 days with a Letter of Limited Filing Status. (Attachment F)

>> (2) Subsequent restrictions must be approved by the division director/designee and should be for no more than a 90 day duration.

> b. In no instance will an informal resolution request or offender grievance which would qualify for an emergency complaint be denied due to restrictions.
> . . . .

Defs.' Ex. Q (Policy #D5-3.2) at 4-6, 25 (Attachment E, form Letter of Caution).

On August 24, 2015, defendant Steele issued plaintiff a Letter of Caution that stated:

You have filed grievances in an improper manner. Specifically, in grievance number, ERDCC 15-624, 15-654, 15-688, 15-885, 15-1277, 15-1278 and 15-1343, you have (duplicated issues/expanded your complaint/used abusive/profane language or

13

threatened bodily harm). Additionally, you filed an "Alleged Reprisal" regarding all these issues which was sent back for normal grievance processing. Per Departmental Procedure D5-3.2, Offender Grievances, continued filing in this manner is a(n) abuse/Misuse of the grievance procedure and will not be tolerated.

Continued filing of improper grievances may result in your being placed on Limited Filing Status. Please refrain from any further filing in this manner.

Defs.' Ex. R (Letter of Caution).

The grievances referenced in the Letter of Caution addressed the following specific issues or incidents.

Grievance ERDCC 15-624 (received 4-23-2015): After plaintiff complained that CO Jomp was giving plaintiff's mail to the wrong inmates, Jomp harassed plaintiff by demanding that plaintiff comply with rules based on Jomp's personal preference and not on institutional rules, such as that plaintiff look Jomp in the eyes when he does cell count, and demanding that cloths be removed from the top of plaintiff's cell door and the doors of other inmates who complained about Jomp's misdelivery of mail; and Jomp speaks in an unprofessional manner to inmates and tries to create conflicts with them. The action requested was "Stop the harassment and retaliatory actions. Stop trying to make rules based on his own desires and trying to enforce them." (Doc. 3-5, Pl.'s Ex. 19.)

Grievance ERDCC 15-654 (received 4-30-2015): (1) Plaintiff's due process rights were violated on April 29, 2015 when the interviewing officer did not read conduct violation ERDCC 15-2374 to plaintiff, take his statement or the names of his witnesses, and the conduct violation was not signed by the reporting officer or the sergeant who gave it to him; and (2) CO Jomp issued conduct violation [ERDCC 15-2374] in retaliation for the plaintiff's filing of Grievance ERDCC 15-624 the previous week because plaintiff had complained about Jomp giving his mail to the wrong inmates.

14

The action requested was for the "false and retaliatory conduct violation [to] be dismissed and expunged." (Doc. 3-8, Pl.'s Ex. 22.)

Grievance ERDCC 15-688 (received 5-5-2015): Plaintiff states he was issued a false conduct violation [ERDCC 15-2374] by CO Jomp and believes it was written before the time Jomp stated the rule violation took place; plaintiff requests that a copy of the computer log identifying when Jomp logged into the computer and started writing the conduct violation, wing surveillance video from April 29, 2015 be presented at his disciplinary hearing as defense evidence, and requesting inmate Paul Cote as a defense witness. The action requested was that "the conduct violation be dismissed and expunged. That CO1. Jomp be removed from this housing unit and instructed to stop his retaliatory agendas." (Doc. 3-6, Pl.'s Ex. 20.)

Grievance ERDCC 15-885 (received 6-5-2015): Plaintiff states that CO Jomp has continuously violated staff conduct and inmate count policies and plaintiff has had to file multiple IRR complaints on Jomp; on June 3, 2015, Jomp again demanded that plaintiff look in his eyes during cell count and refused to leave the cell door until plaintiff complied. Plaintiff states that Jomp previously retaliated against him for filing an IRR complaint, and appears to be targeting him and attempting to "set the stage" to issue another false conduct violation by claiming plaintiff has interfered with cell count because plaintiff failed to comply with "one of his personal made up rules." The action requested is that "CO1. John Jomp be removed from this housing unit [permanently]. That he be reprimanded for violating policy and the laws and statutes related to them. That he be retained [sic] regarding his job requirements and duties." (Doc. 3-7, Pl.'s Ex. 21.)

Grievance ERDCC 15-1277 (received 7-29-2015): Plaintiff states that CO1. Jomp wrote him a false conduct violation [ERDCC 15-2374] on April 29, 2015 in retaliation for an IRR complaint

15

[ERDCC 15-624] plaintiff filed on April 23, 2015, and the statements in the body of the false

conduct violation constitute libel and slander. Sergeant Evans gave plaintiff a blank and unsigned

conduct violation which contained statements Jomp knew were false and slanderous. Jomp and

Evans created a secondary conduct violation report containing the same false and slanderous

statements and gave it to caseworker Lucas. Action requested: "This false conduct violation be

dismissed and expunged." (Doc. 3-17, Pl.'s Ex. 33.)

The IRR response to Grievance ERDCC 15-277 stated:

Your IRR and all pertinent information/documentation have been received and
reviewed. Upon review it was found that this is an expanded duplicate IRR and your
complaint has been addressed in IRR ERDCC 15 624, ERDCC 15 654, ERDCC 15
688, and ERDCC 15 885. Per policy DSOP5-3.2 Offender Grievances states in part,
"Duplicate Complaints: Specific issues or incidents will be addressed only once by
information resolution or offender grievance." It also states that "Continued filing
of duplicate or expanded IRR's/Grievances will be considered misuse of the
procedure and will be dealt with as stated in III.E.F." This issues [sic] will not be
addressed again. Therefore, with this information, your grievance is resolved.

(Doc. 3-17, Pl.'s Ex. 33 at 3.)

Grievance ERDCC 15-1278 (received 7-29-2015): Plaintiff asserts he has been subjected to

offender abuse under Missouri Revised Statute § 217.040 because (1) CO1. Jomp wrote a false

conduct violation [ERDCC 15-2374] against him on April 29, 2015, and Sergeant Evans handed him

an unsigned and blank copy of ERDCC 15-2374; (2) caseworker Lucas found plaintiff guilty on

ERDCC 15-2374 in violation of plaintiff's due process rights even though he knew Jomp issued the

conduct violation in retaliation; (3) Functional Unit Manager Klein and Assistant Warden Lawson

upheld the fraudulent finding of guilt on the false and retaliatory conduct violation; (4) Lucas, Klein,

Lawson, Dale Phillips and Hinkle have denied or approved the denial of every IRR plaintiff has filed

on Jomp, and every IRR complaint "filed on any situation or event related to or fostered by

[plaintiff's] receipt of the false conduct violation." The relief requested was that plaintiff be moved back to Housing Unit 3, cell A-217 with cellmate Paul Cote. (Doc. 3-18, Pl.'s Ex. 34.)

The IRR response to Grievance ERDCC 15-278 stated:

Your IRR and all pertinent information/documentation have been received and reviewed. Upon review it was found that this is an expanded duplicate IRR and your complaint has been addressed in IRR ERDCC 15 624, ERDCC 15 654, ERDCC 15 688, ERDCC 15 885, and ERDCC 15 1277. Per policy DSOP5-3.2 Offender Grievances states in part, "Duplicate Complaints: Specific issues or incidents will be addressed only once by information resolution or offender grievance." It also states that "Continued filing of duplicate or expanded IRR's/Grievances will be considered misuse of the procedure and will be dealt with as stated in III.E.F." This issues [sic] will not be addressed again. Therefore, with this information, your grievance is resolved.

(Doc. 3-18, Pl.'s Ex. 34 at 5.)

After plaintiff received the Letter of Caution, he filed an IRR, offender grievance, and grievance appeal alleging that defendant Steele was retaliating against him when he issued the Letter of Caution. Plaintiff testified that Steele was retaliating against him because plaintiff had another lawsuit pending against Steele arising out of events that occurred at Potosi Correctional Center. Pl.'s Dep. 47:16–21; 51:4-11. The other lawsuit is Davis v. Lancaster, et al., No. 4:13-CV-1638 HEA (E.D. Mo.).[7] Plaintiff initially sued twelve defendants in No. 4:13-CV-1638 HEA, and the docket sheet reflects that at the time the Letter of Caution was issued in August 2015, six defendants remained in the action, including Steele.

Defendants' interrogatory asked plaintiff to describe in detail "each and every fact and piece of evidence . . . that you believe suggests that Defendant Steele was motivated at least in part by your lawsuit (case no. 4:13-cv-1638-HEA) when he issued you a 'Letter of caution' in August, 2015,"

---

[7]The Court may take judicial notice of its own records and files. United States v. Jackson, 640 F.2d 614, 617 (8th Cir. 1981) (quoted case omitted).

plaintiff answered: "Plaintiff direct[s] the Defendants' to his sworn complaint which speaks for itself. Furthermore, Defendants or their counsel is [sic] in possession of referenced complaint. See, (Doc. 14)." Defs.' Ex. S at 1. Plaintiff also testified that Steele was retaliating against him because none of the IRRs cited in the Letter of Caution were duplicate complaints. Pl.'s Dep. 48:1-5, 51:12-18. Plaintiff alleges in the Complaint that Steele refused to respond to any of numerous complaint letters plaintiff sent to him, and refused to respond to plaintiff's grievances and take corrective action, but Steele's issuance of the Letter of Caution is proof he was aware of "all illegal acts exacted on the Plaintiff by these defendants but failed to correct them and ignored all of the Plaintiff's complaints." (Doc. 14 at 21.) Plaintiff also alleged that "Defendants have fraudulently claimed the plaintiff duplicated specific 'IRR' complaints to avoid addressing specific claims and to prevent the plaintiff from exhausting those claims. Defendants are fully aware that this is a federal requirement prior to a prisoner bringing a lawsuit into the courts. (Id.)

In response to defendants' discovery requests, plaintiff declined to provide the names of inmates who might have been deterred from filing grievances because of defendant Steele's Letter of Caution. Defs.' Ex. S at 2. Since the Letter of Caution was issued on August 24, 2015, plaintiff has filed over fifty (50) IRR complaints, over forty (40) Offender Grievances, and over thirty (30) Offender Grievance Appeals. Defs.' Ex. A (Pl.'s Grievance Summary).

**IV. Discussion**

### A. False Conduct Violation - Defendant Jomp

Defendant Jomp moves for summary judgment on plaintiff's claim that Jomp issued him a false conduct violation in retaliation for plaintiff having repeatedly complained to Jomp and other ERDCC officials that Jomp misdelivered prisoners' mail. Jomp argues the claim fails because (1)

18

there is at least "some evidence" that plaintiff committed the rule violation, and (2) plaintiff cannot establish the necessary elements of this claim because he cannot show either that (a) Jomp's action would chill a person of ordinary firmness from engaging in protected activity, or (b) that Jomp possessed the requisite retaliatory motive. Jomp also asserts that he is entitled to qualified immunity.

To prevail on a § 1983 claim for retaliation in violation of the First Amendment, Plaintiff must demonstrate "(1) that he engaged in a protected activity, (2) a government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." Santiago v. Blair, 707 F.3d 984, 991 (8th Cir. 2013) (citing Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004)).

"An inmate may maintain a cause of action for retaliatory discipline under 42 U.S.C. § 1983 where a prison official files disciplinary charges in retaliation for an inmate's exercise of constitutional rights." Hartsfield v. Nichols, 511 F.3d 826, 829 (8th Cir. 2008). An inmate's claim for retaliation fails, however, where the alleged retaliatory conduct violation was issued for an actual violation of a prison rule. Id.; Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994); Orebaugh v. Caspari, 910 F.2d 526, 528 (8th Cir. 1990). Prison officials "may successfully defend a retaliatory discipline claim by showing 'some evidence' that the inmate actually committed a rule violation." Hartsfield, 511 F.3d at 829 (citing Goff v. Burton, 7 F.3d 734, 738-39 (8th Cir. 1993)). Under this standard, "a report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker." Id. at 831.

19

"Thus, when there is a disciplinary decision affirming the charge, the critical inquiry is not whether the prisoner alleges that prison officials retaliated against him for participating in constitutionally protected activity, but instead is whether the prison disciplinary committee ultimately found based upon some evidence that the prisoner committed the charged violation of the prison regulations." Sanders v. Hobbs, 773 F.3d 186, 190 (8th Cir. 2014) (quoting Cornell v. Woods, 69 F.3d 1383, 1389 (8th Cir. 1995)). "If the disciplinary decision is supported by 'some evidence,' the filing of the charge may not be the basis for a retaliatory-discipline claim." Id. (citing cases).

In this case, it is undisputed that there was a cloth on plaintiff's cell door on April 29, 2015. The gist of plaintiff's claim is that the cloth belonged to his cellmate, Paul Cote, and Jomp knew the cloth belonged to Cote, but wrote the conduct violation on plaintiff to retaliate for plaintiff's complaints about Jomp's misdelivery of inmates' mail. The grievance hearing officer, Lucas, after considering the testimony of plaintiff, Paul Cote, and Jomp, credited Jomp's allegations that there was a cloth on plaintiff's cell door in a manner that interfered with its locking mechanism, and that plaintiff had been twice warned about the cloth. Lucas found plaintiff guilty of violating institutional rule 26.1. This finding was upheld by the functional unit manager and deputy warden.

Here, there is "some evidence" to support Lucas's disciplinary decision. First, Jomp filed a conduct violation report stating that he "notice[d] a cloth wedged between the door and the door frame of cell A217" and that plaintiff "had been previously given 2 directives to take the cloth down during lockdowns" and thus was "in violation of rule 26.1 Tampering with Locking or Safety Devices." This alone is "some evidence" to support the disciplinary decision. See Hartsfield, 511 F.3d at 831. Second, it is undisputed that a cloth was on plaintiff's cell door. While plaintiff alleges

20

that the cloth did not belong to him, Jomp knew it did not belong to him, and Jomp had not talked to him about the cloth, evidence concerning plaintiff's allegations – in the form of statements from plaintiff and Cote – was presented to the grievance officer, who apparently discredited them. In reviewing "whether the 'some evidence' standard has been satisfied, [courts] are not to make an independent assessment of the credibility of witnesses or weigh the evidence." Sanders, 773 F.3d at 191 (quoting Goff, 91 F.3d at 1192); see also Mason v. Sargent, 898 F.2d 679 (8th Cir. 1990) (some evidence supported disciplinary committee's findings of rule violations by plaintiff inmate for contraband found in locker box, even though plaintiff claimed that another inmate who shared the same locker box had placed the contraband there). Because there is "some evidence" to support the conduct violation, plaintiff's retaliation claim fails. See Hartsfield, 511 F.3d at 829.

Plaintiff asserts without evidentiary support that Lucas was a biased decisionmaker who would in all instances uphold a reporting officer's version of events. Prison officials, like other officials, are presumed to be impartial decisionmakers. Davis v. Webb, 2014 WL 1314938, at *4 (E.D. Mo. Mar. 28, 2014), aff'd, 590 F. App'x 655 (8th Cir. 2015); see de Llano v. Berglund, 282 F.3d 1031, 1035-36 (8th Cir. 2002). Plaintiff's hearsay testimony that Lucas told plaintiff he was not going against his officer (Jomp) but was not going to send plaintiff to segregation on the conduct violation, accepted as true for purposes of this motion, does not raise a genuine issue of material fact as to whether Lucas was a biased decisionmaker. An inmate's subjective belief, without more, that a prison official acted improperly is insufficient to survive summary judgment. Davis, 2014 WL 1314938, at *4 (citing cases).

For the reasons discussed above, there was "some evidence" for the conduct violation Jomp issued to plaintiff on April 29, 2015. Because the Court finds there was "some evidence" of conduct

21

violating Rule 26.1, plaintiff's retaliatory conduct violation claim fails and defendant Jomp is entitled to summary judgment.

At summary judgment, a defendant is entitled to qualified immunity unless "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." Payne v. Britten, 749 F.3d 697, 708 (8th Cir. 2014) (J. Riley, concurring in part and dissenting in part) (quoting Howard v. Kansas City Police Depot, 570 F.3d 984, 988 (8th Cir. 2009)). Here, because plaintiff fails to establish the existence of a constitutional violation, Jomp is also entitled to qualified immunity.

B. Retaliatory Transfer to Housing Unit 3 - Defendants Ellerbeck, Hinkle, Lucas, Stadt

Defendants Ellerbeck, Hinkle, Lucas, and Stadt (collectively, "Defendants") move for summary judgment on plaintiff's claim that they transferred him from Housing Unit 3 to Housing Unit 1 in retaliation for plaintiff having filed grievances against them. Defendants argue the retaliatory transfer claim fails for the following reasons: (1) Plaintiff's claim is moot, because he was retransfer red to Housing Unit 3 before this suit was filed; (2) there is no evidence that Ellerbeck, Lucas, or Stadt were personally involved in plaintiff's transfer; and (3) plaintiff does not have evidence to support each element of his claim because: (a) plaintiff's transfer from Housing Unit 3 to Housing Unit 1 was not an adverse action; (b) plaintiff's transfer to Housing Unit 1 would not chill a reasonable person from pursuing grievances; and (c) there is no evidence that defendants possessed the requisite retaliatory motive. Defendants also assert they are entitled to qualified immunity.

22

To prevail on a § 1983 claim for retaliation in violation of the First Amendment, Plaintiff must demonstrate "(1) that he engaged in a protected activity, (2) a government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." Santiago, 707 F.3d at 991 (citing Revels, 382 F.3d at 876). However, prison officials may "transfer a prisoner for whatever reason or for no reason at all," Olim v. Wakinekona, 461 U.S. 238, 250 (1983), as long as the transfer is not "in retaliation for the exercise of a constitutional right." Goff, 7 F.3d at 737. Consequently, to prevail on a retaliatory transfer claim, an inmate must show that transfer from one housing unit to another would not have occurred "*but for* an unconstitutional, retaliatory motive." Spencer v. Jackson County Mo., 738 F.3d 907, 912 (8th Cir. 2013) (emphasis added) (citing cases).

### 1. Plaintiff's Claim is Not Moot

Defendants' argument that plaintiff's retaliatory transfer claim is moot because he was retransferred to Housing Unit 3 before he filed suit does not entitle them to summary judgment. The cases Defendants cite in support are readily distinguishable, because the plaintiffs in those cases sought only declaratory or injunctive relief of retransfer, as opposed to the money damages plaintiff seeks in this case.[8] Further, none of the plaintiffs in the cited cases alleged they were transferred in

---

[8]See Defs.' Mem. Supp. Mot. Summ. J. at 13 (citing Preiser v. Newkirk, 422 U.S. 395 (1975) (state prisoner's § 1983 action seeking declaration that transfer without hearing from medium security to maximum security prison violated due process, and seeking an injunction ordering his return to the medium security prison, was moot when the prisoner was returned to the medium security prison and later transferred to a minimum security prison); Olds v. Brill, 205 F.3d 1347 (8th Cir. 2000) (unpublished per curiam) (habeas petition under 28 U.S.C. § 2241 contesting transfer from Colorado to a private prison in Minnesota was mooted when the petitioner was transferred back to Colorado); Smith v. Hundley, 190 F.3d 852, 855 (8th Cir. 1999) (§ 1983 action seeking injunctive and declaratory relief that Iowa state prison officials violated plaintiff's First Amendment rights by

23

retaliation for First Amendment protected activity as does plaintiff here. See, e.g., Dixon v. Brown, 38 F.3d 379 (8th Cir. 1994) (district court erred in summarily dismissing a retaliatory discipline claim merely because the disciplinary charge was dismissed and the inmate was not punished).

### 2. Lack of Personal Involvement by Ellerbeck, Lucas, or Stadt

Defendants argue that plaintiff's claim concerning his transfer from Housing Unit 3 to Housing Unit 1 fails against defendants Ellerbeck, Lucas, and Stadt because there is no evidence these defendants were involved in plaintiff's transfer. Defendants assert that all of plaintiff's allegations concerning Ellerbeck, Lucas, and Stadt's involvement in his housing unit transfer are conclusory and unsubstantiated by any probative evidence.

"Section 1983 provides a federal cause of action against anyone who, acting pursuant to state authority, violates any 'rights, privileges or immunities secured by the Constitution and laws' of the United States." Pediatric Specialty Care, Inc. v. Arkansas Depot of Human Servs., 293 F.3d 273, 277 (8th Cir. 2002) (quoting 42 U.S.C. § 1983). The plaintiff in a § 1983 action must show that a defendant deprived him of a constitutional right while acting under color of state law. "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights," Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990). "A defendant will not be held liable under § 1983 unless he was personally involved in causing the deprivation of a constitutional right." Triplett v. Azordegan, 570 F.2d 819, 823 (8th Cir. 1978).

"Liability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed. Section 1983 does not sanction tort by association." Smith

---

denying him items for practice of his Seax-Wicca faith was mooted when plaintiff was transferred to a different institution and was no longer subject to the alleged unlawful policies)).

v. City of Minneapolis, 754 F.3d 541, 547 (8th Cir. 2014) (internal quotation marks omitted). The Court therefore examines the evidence plaintiff has offered concerning each Defendant's personal involvement in his housing unit transfer. For the reasons discussed below, the Court finds plaintiff has not established that a genuine issue of material fact exists as to whether these defendants were involved in his transfer.

### a. Defendant Ellerbeck

To support his allegations of retaliation against defendant Ellerbeck, plaintiff refers to the allegations in his verified Complaint, primarily Ellerbeck's statement after she informed plaintiff he was being transferred to Housing Unit 1, that "this is what happens to inmates when they file grievance complaints on staff in this housing unit." (Doc. 14 at 14, ¶ 53.) As relevant to the retaliatory transfer claim, plaintiff also alleges in the Complaint:

[Defendants Hinkle], Lucas, Stadt and Ellerbeck moved the plaintiff because they were angry about the grievances plaintiff filed on them. (Doc. 14 at 14, ¶ 55.)

On July 21, 2015, defendants Lucas, Stadt, and Ellerbeck conspired with defendant Hinkle . . . [a]nd she arbitrarily moved the Plaintiff form [sic] [Housing Unit 3, cell A-217] to [Housing Unit 1, cell B-110] in retaliation and in response to the IRR complaint No. ERDCC 15-790 that Plaintiff filed on defendant Lucas, Stadt, Evans, Ellerbeck, and Jomp. (Doc. 14 at 16, ¶ 61.)

"[D]efendants Lucas, Hinkle, Stadt, and Ellerbeck . . . conspired and transferred the Plaintiff from [Housing Unit 3, cell A-217] to [Housing Unit 1, cell B-110] in retaliation for and in response to IRR grievance complaints the Plaintiff filed on defendants Lucas, Stadt, and Ellerbeck, and for requesting as a remedy that defendant Lucas be removed from housing unit three . . . ." (Doc. 14 at 27, ¶ 102.)

Plaintiff testified in deposition that he "knows" Ellerbeck was "part of" his move, and her statement "to me was a clear indication that she not only knew, she not only supported it, but she was a part of it." Pl. Dep. 58:22-59:1. "[W]hen Defendant Ellerbeck tells me this is what happens to

25

inmates that file on Housing Unit 3 staff, I think that's a clear indication of [retaliation.]" Id. 62:2-4. Plaintiff also testified, "[B]eing that I had filed IRRs on Defendant Stadt and Defendant Lucas and Defendant Ellerbeck, they moved me and helped facilitate me being moved to 1 House." Id. 57:17-20.[9]

In response to plaintiff's interrogatory asking, "On July 21, 2015, did you know and inform Davis that he was being moved from HU.3 to HU.1?" Ellerbeck answered, "I do not recall that date as this was a long time ago and I am now retired; but at some point in time I did know Davis was being moved. I believe a wing officer informed Davis." Pls.' Ex. 10 at 4-5 (Doc. 117-10). In response to another interrogatory, Ellerbeck admitted that she was the Housing Unit 3 control center officer on July 21, 2015. Id. at 6.

Here, there is no evidence from which a reasonable jury could conclude that Ellerbeck was directly responsible for any deprivation of plaintiff's constitutional rights with regard to his transfer to Housing Unit 1. The Court accepts for purposes of summary judgment that Ellerbeck told plaintiff he was being moved because he had filed grievances on Housing Unit 3 staff. This statement does not establish, however, that a genuine issue of material fact exists as to whether Ellerbeck had any personal involvement in plaintiff's transfer to Housing Unit 1. Compare Webb v. Hedrick, 409 F. App'x 33, 35 (8th Cir. 2010) (unpublished per curiam) (in Bivens action, regardless of whether two correctional officials fabricated a disciplinary charge against plaintiff, neither was responsible for his placement in administrative segregation pending investigation, and therefore were entitled to summary judgment on claim relating to placement in segregation).

_____

[9]As stated above in the Facts section, plaintiff's contention in opposing summary judgment that his allegations against defendants Ellerbeck, Lucas, and Stadt would be supported by the documents listed on defendants' privilege log is without merit.

Plaintiff testified that the functional unit managers of Housing Units 1 and 3 had the authority to make inmate transfers happen, and those managers "would have had to have been the two that actually ultimately signed off on and facilitated that move to happen." Pl.'s Dep. 58:14-21. Ellerbeck offers uncontroverted evidence that she was a control center officer, not a functional unit manager of either housing unit. Plaintiff's own testimony therefore undermines his assertion that Ellerbeck was personally responsible for his transfer.

Further, Ellerbeck's statement does not evidence retaliatory intent, but rather mirrors the official explanation plaintiff was given in response to his IRR concerning the transfer, which stated in part, "You filed numerous IRR's alleging the Case Managers in Housing Unit 3 were interfering with your 'access to the courts' and had been retaliat[ing] against you for filing these IRR's. Therefore, the Functional Unit Manager believed it would be in the best interest for you to be moved from Housing Unit 3, as the majority of the complaints were against staff in the unit."

Plaintiff's other allegations against Ellerbeck in the Complaint, as quoted above, are conclusory and unsupported, and are insufficient to permit a finding in plaintiff's favor against Ellerbeck or establish that a genuine issue of material fact exists.

Because defendant Ellerbeck cannot be held liable under § 1983 if she was not personally involved in plaintiff's transfer, and plaintiff has not substantiated his allegations against Ellerbeck with sufficient probative evidence that would permit a jury to find in his favor, the Court will grant defendant Ellerbeck's motion for summary judgment on the retaliatory transfer claim. Because plaintiff fails to establish the existence of a constitutional violation, Ellerbeck is also entitled to qualified immunity. See Payne, 749 F.3d at 708.

### b. Defendant Lucas

To support his allegations of retaliation against defendant Lucas, plaintiff refers to the allegations in his verified Complaint. In addition to the allegations quoted above at **page 19**, the Complaint also alleges that plaintiff was instructed to report to Lucas as he was packing to leave Housing Unit 3, and "Lucas tried to persuade plaintiff to drop the grievance complaint he filed on defendant Hinkle" but plaintiff refused to do so. Doc. 14 at 15, ¶ 56. Plaintiff testified in deposition that "from what [he] understand[s]," Lucas was "involved" in his transfer. Pl. Dep. 53:22-54:6. Asked for supporting facts apart from the allegations in his Complaint, plaintiff testified, "Lucas is antagonizing. He does stuff all the time. I mean, I can't even articulate all that stuff. His is just – what was relevant I put it in my complaint." Pl. Dep. 56:19-24. Plaintiff testified, "[B]eing that I had filed IRRs on Defendant Stadt and Defendant Lucas and Defendant Ellerbeck, they moved me and helped facilitate me being moved to 1 House." Pl. Dep. 57:17-20. Finally, plaintiff testified, "I know that Defendant Lucas . . . [was] not only abreast of it, but part of it." Pl. Dep. 58:22-23. Plaintiff also cites Lucas's answer to his interrogatory, which stated that Lucas learned of plaintiff's move the morning it happened, as proof of his involvement in the transfer. Pl.'s Ex. 2 at 15 (Doc. 117-2).

Here, there is no evidence from which a reasonable jury could conclude that Lucas was directly responsible for any deprivation of plaintiff's constitutional rights with regard to his transfer "to Housing Unit 1. Accepting for purposes of summary judgment that Lucas asked plaintiff on the morning of his transfer to drop his grievance against Hinkle, this is insufficient to raise a genuine issue of fact as to whether Lucas had personal responsibility for the transfer. See Webb, 409 F. App'x at 35. Plaintiff's other conclusory and unsupported allegations that Lucas was involved in

his transfer are not supported by any facts, as opposed to speculation and conjecture, to indicate Lucas had personal involvement in his transfer to Housing Unit 1. Further, Lucas was a case manager, not a functional unit manager, and plaintiff testified that the functional unit managers "actually ultimately signed off on and facilitated that move to happen." Pl.'s Dep. 58:14-21.

Because defendant Lucas cannot be held liable under § 1983 if he was not personally involved in plaintiff's transfer, and plaintiff has not substantiated his allegations against Lucas with sufficient probative evidence that would permit a jury to find in his favor, the Court will grant defendant Lucas's motion for summary judgment on the retaliatory transfer claim. Because plaintiff fails to establish the existence of a constitutional violation, Lucas is also entitled to qualified immunity. See Payne, 749 F.3d at 708.

### c. Defendant Stadt

To support his allegations of retaliation against defendant Stadt, plaintiff refers to the allegations in his verified Complaint. Apart from the allegations in the Complaint, Plaintiff testified in deposition, "[B]eing that I had filed IRRs on Defendant Stadt and Defendant Lucas and Defendant Ellerbeck, they moved me and helped facilitate me being moved to 1 House." Pl. Dep. 57:17-20. Plaintiff also testified that Stadt was the acting functional unit manager of Housing Unit 3 and defendant Hinkle was the acting functional unit manager of Housing Unit 1 on the day he was transferred, "and that falls under their authority to make those things happen. So they would have had to have been the two that actually ultimately signed off on and facilitated that move to happen." Pl.'s Dep. 58:14-22.

The Court concludes there is no evidence from which a reasonable jury could conclude that Stadt was directly responsible for any deprivation of plaintiff's constitutional rights with regard to

his transfer to Housing Unit 1. Plaintiff's testimony that Stadt was the acting functional unit manager of Housing Unit 3 on the day of his transfer is the only factual allegation he makes against her to support the assertion that Stadt was involved in his transfer, as plaintiff's other allegations against Stadt are conclusory and speculative. The Court gives consideration to plaintiff's testimony and scrutinizes "its particular factual allegations . . . for 'independent documentary evidence' to support them." O'Bryan v. KTIV Television, 64 F.3d 1188, 1191 (8th Cir. 1995). Self-serving testimony without support is not sufficient to defeat a properly-supported motion for summary judgment. See Bacon v. Hennepin County Med. Ctr., 550 F.2d 711, 716 (8th Cir. 2008).

Here, although plaintiff conducted extensive discovery to support his case, he does not offer any independent documentary evidence to support his testimony that Stadt was the acting functional unit manager of Housing Unit 3 on July 21, 2015. Plaintiff's testimony is controverted by Stadt's answers to plaintiff's interrogatories. Stadt, who is now retired, averred that she did not recall who the acting functional unit manager for either Housing Unit 1 or Housing Unit 3 was during the period July 17-21, 2015. Pl.'s Ex. 6 at 8-9 (Doc. 117-6). However, a contemporaneous Inter-Office Communication dated August 13, 2015, from Stadt to defendant Hinkle regarding plaintiff's Grievance ERDCC15-1244 states, "I did not arrange to move Offender Davis, Frederick #500842 to H[ousing] U[nit] 1. I did not authorize the move, nor did I enter it into the computer. I have at no time conspired to move Offender Davis for retaliation."[10] In addition, Stadt averred that she did

---

[10]This Inter-Office Communication ("IOC") was listed as Document 37 on defendants' privilege log. As previously stated, the Defendants did not rely on any of the privilege log documents to support their summary judgment motion, but the Court finds the IOC is highly relevant to plaintiff's claim against defendant Stadt and therefore considers it. A copy of the IOC is attached to this Memorandum and Order as Exhibit A, as plaintiff has not had the opportunity to see the document.

not recall when plaintiff was moved or the date on which she would have been aware he was moving, but recalled "knowing at some point that the plaintiff was moved *after that information was put into the system.*" Pl.'s Ex. 6 at 4 (Doc. 117-6) (emphasis added).

Plaintiff does not offer any evidence sufficient to controvert Stadt's interrogatory answers or the Inter-Office Communication dated August 13, 2015, or otherwise raise a genuine issue of fact as to Stadt's personal involvement in his transfer.

Because defendant Stadt cannot be held liable under § 1983 if she was not personally involved in plaintiff's transfer, and plaintiff has not substantiated his allegations against Stadt with sufficient probative evidence that would permit a jury to find in his favor, the Court will grant defendant Stadt's motion for summary judgment on the retaliation claim. Because plaintiff fails to establish the existence of a constitutional violation, Stadt is also entitled to qualified immunity. See Payne, 749 F.3d at 708.[11]

### 3. Plaintiff's Evidence to Support Retaliatory Transfer Claim

Defendants argue that plaintiff's claim concerning his transfer from Housing Unit 3 to Housing Unit 1 fails because plaintiff cannot establish the necessary elements of the claim. Because defendants Ellerbeck, Lucas, and Stadt are entitled to summary judgment on this claim, it remains only against defendant Hinkle. It is undisputed that Hinkle was the acting functional unit manager in Housing Unit 3 on July 21, 2015, and authorized plaintiff's transfer to Housing Unit 1. It is also undisputed that plaintiff engaged in protected activity by filings IRRs, grievances, and grievance appeals. Hinkle argues she is entitled to summary judgment because plaintiff cannot demonstrate

---

[11]Even if an issue of material fact existed as to defendant Stadt's personal involvement in plaintiff's housing unit transfer, she would be entitled to summary judgment for the reasons discussed with respect to defendant Hinkle at section 3, *infra.*

she took any adverse action against him, that his transfer would not chill a person of ordinary firmness from continuing in the protected activity, or that plaintiff would not have been transferred but for an unconstitutional, retaliatory motive.

a. Absence of Adverse Action

Hinkle argues that plaintiff cannot establish his transfer from Housing Unit 3 to Housing Unit 1 was an adverse action because it is undisputed that both are incentive wing housing units, where plaintiff had the exact same privileges. Hinkle cites plaintiff's deposition testimony that Housing Unit 1 "has everything Housing Unit 3 has except the doors are different," Pl.'s Dep. 64:3-13, and that he simply "didn't want to be in Housing Unit 1." Id., 64:14-16.

Plaintiff contends the transfer was adverse because he was assigned a top bunk in Housing Unit 1 instead of the bottom bunk he had in Housing Unit 3, he shared a cell with a younger, gang-member inmate who smoked and with whom he had nothing in common, he developed "phlegm in [his] congestive system" from secondhand smoke, and the cell doors closed loudly and "loud noises startle my nervous system."[12]

The Eighth Circuit has held that an intra-prison transfer from one housing module to another was an adverse action where the transferee module housed younger and more violent offenders. Spencer, 738 F.3d at 912. Here, it is undisputed that plaintiff was transferred from one incentive wing housing unit to another, and that the privileges and conditions in the two units were virtually identical, apart from the transferee unit having noisier doors. Unlike the plaintiff in Spencer,

---

[12]Plaintiff testified that loud noises cause a "startle" response and a "shock to [his] nervous system" as a result of Guillain-Barre syndrome, "an illness that [he] had when [he] was on the streets" that "deals with your nervous system." Pl's. Dep. 64:18-65:16. Plaintiff does not have a medical lay-in that would prevent him from being exposed to loud noises. Id. 65:11-15.

plaintiff has not offered any evidence that the offenders in Housing Unit 1 were younger and more violent than those in Housing Unit 3, as both housing units were incentive wings. Plaintiff did not have a medical lay-in restriction that required him to have a bottom bunk or avoid loud noises, which were the only differences he identified between the two housing units. For these reasons, the Court concludes that plaintiff's transfer from Housing Unit 3 to Housing Unit 1 was not an adverse action.

The Court also concludes that plaintiff's placement in Housing Unit 1 with a cellmate who was younger, a smoker, a gang member, and a person with whom plaintiff had nothing in common, was not an adverse action. Inmates do not have a constitutional right to their choice of cells or cellmates, Cole v. Benson, 760 F.2d 226, 227 (8th Cir. 1985) (per curiam), and plaintiff has not presented any evidence that he was assigned to a cell with an inmate who threatened him, presented a substantially increased risk of violence, or whose risk assessment or custody classification was incompatible with plaintiff's. The Court is also mindful of plaintiff's testimony that "nobody gets to the incentive wing on accident" and that persons in the incentive wings are "in a model inmate sort of stance or position." Pl.'s Dep. 32:2-7. Plaintiff testified he did not have a medical restriction that precluded his sharing a cell with a smoker, and has not established that sharing a cell with a smoker had a substantial impact on his health during the seventy-three days he was in Housing Unit 1.

Because plaintiff cannot establish that his transfer to Housing Unit 1 was an adverse action, defendant Hinkle is entitled to summary judgment on plaintiff's retaliatory transfer claim. Further, as plaintiff fails to establish the existence of a constitutional violation, Hinkle is also entitled to qualified immunity on this claim. See Payne, 749 F.3d at 708.

### b. Lack of Chilling Effect

Assuming for purposes of summary judgment analysis that plaintiff's transfer to Housing Unit 1 was an adverse action, defendant Hinkle also argues plaintiff's claim fails because the transfer to a different incentive housing unit would not chill a reasonable person from pursuing grievances.

A § 1983 retaliation claim requires a plaintiff to establish that the adverse action taken against him would chill a person of ordinary firmness from continuing the protected activity, here the filing of IRRs and grievances. See Spencer, 738 F.3d at 911. "The ordinary-firmness test is well established in the case law, and is designed to weed out trivial matters from those deserving the time of the courts as real and substantial violations of the First Amendment." Garcia v. City of Trenton, 348 F.3d 726, 728 (8th Cir. 2003). The Eighth Circuit applies the ordinary-firmness test in the First Amendment prisoner retaliation context. See Lewis v. Jacks, 486 F.3d 1025, 1029 (8th Cir. 2007) (holding the record contained insufficient evidence that increasing the prisoner's work load would chill a prisoner of ordinary firmness from using the prison grievance process).

The ordinary-firmness "test is an objective one, not subjective." Garcia, 348 F.3d at 729. In determining whether the intra-prison housing unit transfer plaintiff experienced, i.e., from one incentive housing unit to a similar incentive housing unit, with a top bunk assignment, noisier doors, and a younger, gang member, smoking cellmate, would chill a prisoner of ordinary firmness from using the prison grievance process. The question is not whether plaintiff himself was deterred, although how plaintiff acted might be evidence of what a reasonable prisoner would have done. See Santiago, 707 F.3d at 992. The test is what a prisoner of ordinary firmness would have done in reaction to this transfer. Id.

Here, the Court concludes a reasonable jury could not find that transfer to a similar incentive wing housing unit, though one with noisy doors, a top bunk assignment, and a cellmate with the characteristics plaintiff has identified as objectionable, would chill a prisoner of ordinary firmness from continuing to file IRRs or grievances. Plaintiff has not identified any relevant cases or evidence to support a finding that the type of transfer he experienced could have a chilling effect. Because prisoners do not have the constitutional right to choose their cellmates, Cole, 760 F.2d at 227, it is a routine part of prison life for inmates to be celled with others whose personal habits or characteristics they might find objectionable or prefer to avoid. In addition, the fact that plaintiff has filed dozens of IRRs and grievances following the transfer is some evidence that a prisoner of ordinary firmness – as opposed to plaintiff, who testified he is more "obstinate" and concerned about principle than a typical prisoner – would not have been deterred from continuing to engage in the protected activity of filing prison grievances.

For this additional reason, the Court finds that defendant Hinkle is entitled to summary judgment on plaintiff's retaliatory transfer claim.

### c. Lack of But-For Unconstitutional Motive

Finally, defendant Hinkle argues there is no evidence that she possessed the requisite retaliatory motive. Plaintiff responds that there is evidence the defendants transferred him to Housing Unit 1 "at least in part motivated by retaliation." Pl.'s Response at 15. Plaintiff points to Ellerbeck's statement that "this is what happens to inmates when they file grievance complaints on staff in this housing unit," Hinkle's admission that she authorized plaintiff's transfer, and Hinkle's statement to plaintiff that he was moved because he had filed IRR complaints against several corrections officials in Housing Unit 3. (Doc. 14 at 16, ¶ 62.) Plaintiff further cites his niece's

35

contact with Assistant Warden Teri Lawson the day after plaintiff's transfer, and Lawson's explanation to her that "offender Davis was moved because of IRR complaints he filed on some of the staff in housing unit three." (Doc. 14 at 17, ¶ 67.)

To prevail on a retaliatory transfer claim, an inmate must show that transfer from one housing unit to another would not have occurred "*but for* an unconstitutional, retaliatory motive." Spencer, 738 F.3d at 912 (emphasis added). In other words, a prisoner cannot prevail if the adverse action was taken for a legitimate reason as well as for an improper retaliatory motive. See, e.g., Beaulieu v. Ludeman, 690 F.3d 1017, 1026-27 (8th Cir. 2012) (even if retaliation was one factor in decision to transfer civilly committed person to Sex Offender Program's Behavioral Therapy Unit, the plaintiff did not establish the transfer would not have occurred "but for" the retaliation, where supplemental incident reports showed he displayed disruptive behavior) (citing cases); Ponchik v. Bogan, 929 F.2d 419, 420 (8th Cir. 1991) (rejecting inmate's retaliatory transfer claim even where retaliation was clearly a factor in transfer). Plaintiff's assertion that his transfer was done "at least in part" for retaliation fails to recognize the applicable standard. "Even at summary judgment, 'the burden is on the prisoner to prove that but for an unconstitutional, retaliatory motive,' the transfer would not have occurred." Webb, 409 F. App'x at 35 (quoting Sisneros v. Nix, 95 F.3d 749, 752 (8th Cir. 1996)).

Here, plaintiff does not offer sufficient evidence to establish the existence of a genuine issue of material fact that his transfer would not have occurred but for improper retaliation against him. First, Ellerbeck's and Lawson's statements cannot be attributed to Hinkle. Second, at all times, plaintiff was transparently and consistently informed – as was his niece – that he was being moved to a different housing unit because he had filed multiple grievances against Housing Unit 3 staff,

asking that they be removed from the unit. Hinkle told plaintiff she was not willing to reassign all of the officers as he requested, but was willing to separate plaintiff from the officers by moving him to Housing Unit 1. The response to plaintiff's IRR complaint stated that he was "moved on July 21, 2015 per directive of Functional Unit Manager Kerry Klein" because "the Functional Unit Manager believed it would be in the best interest for [plaintiff] to be moved from Housing Unit 3, as the majority of [plaintiff's] complaints were against staff in the unit. This is to provide [plaintiff] easier access to the Functional Unit Manager, where FUM Klein['s] primary office is."

Deputy Director Kempker further explained the reason for Plaintiff's transfer in his response to Plaintiff's Offender Grievance Appeal: "Functional Unit Manager Kerry Klein stated you were moved to Housing Unit #1 after you filed several complaints against staff in Housing Unit #3. He felt it was in your best interests to move you to the housing unit where his main office was, so you would be able to speak to him more easily." The Citizens Advisory Committee concluded that plaintiff obtained the relief he had sought: to be separated from certain correctional officers.

Prison authorities have a great deal of discretion in running their institutions. Sanders v. St. Louis County, 724 F.2d 665, 668 (8th Cir. 1983). The defendants have presented uncontroverted evidence that Hinkle chose to transfer plaintiff to another incentive wing at ERDCC instead of acceding to plaintiff's requests that multiple correctional officers be transferred out of his housing wing. This was a legitimate course of action taken in response to plaintiff's multiple complaints about Housing Unit 3 staff. Plaintiff's labeling of the defendants' explanation for his transfer as "retaliation" does not make it so, and falls far short of a showing plaintiff would not have been transferred but for an improper retaliatory motive. "Bare allegations of retaliatory animus cannot

withstand a properly supported motion for summary judgment." Green v. Nocciero, 676 F.3d 748, 753 (8th Cir. 2012).

For these reasons, the Court concludes there is insufficient evidence from which a reasonable jury could conclude that plaintiff's transfer to Housing Unit 1 would not have occurred but for an improper retaliatory motive. Defendant Hinkle's motion for summary judgment on the retaliatory transfer claim will also be granted on this basis.

### C. Threat to Limit Grievance Access - Defendant Steele

Defendant Steele argues that plaintiff's retaliation claim concerning Steele's issuance of a Letter of Caution fails because plaintiff cannot establish the necessary elements of the claim. To prevail on a § 1983 claim for retaliation in violation of the First Amendment, plaintiff must demonstrate "(1) that he engaged in a protected activity, (2) a government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." Santiago, 707 F.3d at 991.

Steele argues that plaintiff cannot establish that receipt of a Letter of Caution would chill a person of ordinary firmness from continuing to file IRRs and grievances, and cannot establish that issuance of the Letter of Caution was motivated at least in part by plaintiff's filing of a separate lawsuit against Steele.

A § 1983 retaliation claim requires a plaintiff to establish that the adverse action taken against him would chill a person of ordinary firmness from continuing the protected activity, here the filing of IRRs and grievances. See Spencer, 738 F.3d at 911. "The ordinary-firmness test is well established in the case law, and is designed to weed out trivial matters from those deserving the time

of the courts as real and substantial violations of the First Amendment." Garcia, 348 F.3d at 728. The Eighth Circuit applies the ordinary-firmness test in the First Amendment prisoner retaliation context. See Lewis, 486 F.3d at 1029 (holding the record contained insufficient evidence that increasing the prisoner's work load would chill a prisoner of ordinary firmness from using the prison grievance process).

The ordinary-firmness "test is an objective one, not subjective." Garcia, 348 F.3d at 729. In determining whether receipt of a Letter of Caution would chill a prisoner of ordinary firmness from using the prison grievance process, the question is not whether plaintiff himself was deterred, although how plaintiff acted might be evidence of what a reasonable prisoner would have done. See Santiago, 707 F.3d at 992. The test is what a prisoner of ordinary firmness would have done in reaction to this transfer. Id.

Here, the Court concludes no reasonable jury could find that receipt of a Letter of Caution would chill a prisoner of ordinary firmness from continuing to use the prison grievance process. Plaintiff has not identified any relevant cases or evidence to support a finding that receipt of such a letter could have a chilling effect. MODOC Policy #D5-3.2 establishes procedures governing use of the prisoner grievance procedure. Among other things, the policy prohibits "Duplicate Complaints" which it defines by explaining, "Specific issues or incidents will be addressed only once by informal resolution request or offender grievance." The policy provides that if a prisoner violates grievance procedure rules, a Letter of Caution may be issued or a limited-duration restriction on the number of grievances the prisoner files may be imposed.

Under Policy #D5-3.2, a Letter of Caution is merely a notice to an inmate that one or more grievances he filed violate MODOC's grievance procedures. In plaintiff's case, he was notified that

some of his grievances were found to be duplicates, i.e., that more than one grievance addressed a specific issue or incident. The Letter of Caution stated that "continued filing of improper grievances may result in your being placed on Limited Filing Status." The Letter of Caution did not impose any restrictions on plaintiff's ability to file grievances, and only cautioned that if he continued to file duplicate grievances, he "may" be restricted to filing two grievances per week for a ninety-day period, i.e., placed on Limited Filing Status.

The Letter of Caution issued to plaintiff does not rise to the level of a deprivation or threat that has been found sufficient in other cases to establish a chilling effect necessary to support a First Amendment retaliation claim. See, e.g., Santiago, 707 F.3d at 992 (correctional officer's threat that if plaintiff did not drop excessive force grievance, he would be found hanging in his cell and his death would be made to look like a suicide, was sufficient to chill a prisoner of ordinary firmness from engaging in prison grievance process); Nelson v. Shuffman, 603 F.3d 439, 450 (8th Cir. 2010) (holding that plaintiff who allegedly was held in isolation in a structurally unfinished and inadequate ward and deprived of access to legal counsel, mail, family, recreation, and phone calls demonstrated sufficient deprivations to survive summary judgment on a First Amendment retaliation claim); Cooper v. Schriro, 189 F.3d 781, 784 (8th Cir. 1999) (per curiam) (allegation that correctional officer shut off water for five days because the prisoner used the prison grievance system was sufficient to state a retaliation claim).

In addition, the fact that plaintiff has filed dozens of IRRs and grievances since receiving the Letter of Caution is some evidence that a prisoner of ordinary firmness – as opposed to plaintiff, who testified he is more "obstinate" and concerned about principle than a typical prisoner – would not have been deterred from continuing to use the grievance procedure.

Because plaintiff has not established that there are genuine issues of fact as to whether a prisoner of ordinary firmness would be chilled from using the prison grievance process because of receiving a Letter of Caution, defendant Steele is entitled to summary judgment on plaintiff's retaliation claim. Because plaintiff fails to establish the existence of a constitutional violation, Steele is also entitled to qualified immunity on this claim. As a result, the Court does not address Steele's additional argument in support of summary judgment.

D. State Law Defamation Claim

Plaintiff also asserts a state law defamation claim against defendant Jomp, and Jomp moves for summary judgment based on the Missouri doctrine of official immunity. "A district court has broad discretion to decline to exercise supplemental jurisdiction over state law claims after all claims over which the district court had original jurisdiction have been dismissed." Elmore v. Harbor Freight Tools USA, Inc., 844 F.3d 764, 767 (8th Cir. 2016); see 28 U.S.C. § 1367(c). The Eighth Circuit has "stress[ed] the need to exercise judicial restraint and avoid state law issues whenever possible" and the "necessity to provide great deference and comity to state court forums to decide issues involving state law questions." Condor Corp. v. City of St. Paul, 912 F.2d 215, 220 (8th Cir. 1990). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." Barstad v. Murray County, 420 F.3d 880, 888 (8th Cir. 2005) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).

In the exercise of its discretion, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claim following the dismissal of all federal claims in this action. Plaintiff's state law claim will be dismissed without prejudice.

## V. Conclusion

For the foregoing reasons, the Court will grant defendants' motion for summary judgment on plaintiff's retaliation claims under 42 U.S.C. § 1983 against defendants Jomp, Ellerbeck, Hinkle, Lucas, Stadt, and Steele. The Court declines to exercise supplemental jurisdiction over plaintiff's state law defamation claim against defendant Jomp and will dismiss this claim without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment is **GRANTED**. [Doc. 144]

**IT IS FURTHER ORDERED** that plaintiff's state law defamation claim is **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall file in paper format under seal the seventy-four documents listed on defendants' privilege log that were submitted to the Court for *in camera* review. These documents shall not be scanned or otherwise reproduced, except for copies made for the Eighth Circuit Court of Appeals, if an appeal is filed.

An appropriate judgment and order of dismissal will accompany this Memorandum and Order.

CHARLES A. SHAW
UNITED STATES DISTRICT JUDGE

Dated this  5th  day of September, 2018.

### *Inter-Office Communication*

**DATE:** 08/13/2015

**TO:** Melanie Hinkle CCMII

**FROM:** Claire Stadt CCMII *Claire Stadt ccmil*

**SUBJECT:** IRR: ERDCC 15-1244

---

I did not arrange to move Offender Davis, Frederick #500842 to HU1. I did not authorize the move, nor did I enter it into the computer. I have at no time conspired to move Offender Davis for retaliation.

If you are need of any other information, feel free to contact me.

EXHIBIT A

RECEIVED

AUG 1 4 2015

HOUSING UNIT #1